## First National Bank of Joliet v. Illinois Steel Company et al.

1. MORTGAGES—*Deficiency—Rents and Profits During Time Allowed for Redemption.*—If the amount realized at a sale under a mortgage does not pay the mortgage debt, and the mortgage itself provides for a resort to the rents and profits during the redemption period, such provision will be enforced in favor of the mortgagee as a valid contract upon proper application by him.

**Foreclosure.**—Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 17, 1897.

GEORGE S. HOUSE, attorney for appellant.

E. PARMALEE PRENTICE and GARNSEY & KNOX, attorneys for appellee Illinois Steel Company.

A person may contract with reference to the use of property and the receipts of its rents and profits pending redemption.

Every kind of interest in real estate may be mortgaged if it be subject to sale and assignment. It does not matter whether it be remainder or reversion and contingent interest, or a possibility coupled with interest, if it be an interest in the land itself. Jones on Mtgs., Sec. 136.

A mortgage may be made of rents due under a lease, and although a right of entry be given to the mortgagee, the mortgage is a mere security like any other mortgage of real estate, and the mortgagor remains the real owner until the foreclosure. Ib. 140; Van Rensselaer v. Dennison, 35 N. Y. 393.

The doctrine is understood to be that everything which may be considered as property, whether, in the technical language of the law, denominated real or personal property, may be the subject of mortgage, as advowsons, rectories, tithes. Reversions and remainders being capable of grant from man to man, and possibilities also being assignable, are mortgageable, a mortgage being only an additional assignment. Rents and also franchises may be the subject of a mortgage. Curtis v. Root, 20 Ill. 522.

Rent is an incorporeal hereditament. 3 Kent's Com., 401, 403.

An agreement or contract relative to rents, refers to a chattel real, and is to be executed and recorded in the same way as conveyances of land, and persons dealing with the subject-matter are bound to take notice of a conveyance affecting any chattel real in the same way and to the same extent as if the instrument was one relative to lands or tenements. Knapp v. Jones, 143 Ill. 375.

From these authorities it would seem to follow that a disposition of the rent of the property pending redemption, after a mortgage sale, would be enforced by the courts as a valid contract, and applied in favor of the person who should show himself to be under his contract equitably entitled to its benefit, and indeed this exact question has been presented in New York, where it is held that a covenant in a mortgage, that on beginning proceedings for foreclosure the mortgagee shall have a right to a receiver of

the rents and profits for his benefit, will be enforced by the court. Bryson v. James, 55 N. Y. Superior Ct. 374.

MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

The appeal in this cause is prosecuted from a decree rendered by the Circuit Court in the case of The First National Bank of Joliet v. Ashley Wire Co. et al., and the bill of Illinois Steel Co. v. Ashley Wire Co. et al., for the foreclosure of its mortgage on the plant of the latter. The two causes were by agreement of parties consolidated and heard together as one case, in the disposing of both matters, with the decree entered in the cause of the said First National Bank of Joliet v. The Ashley Wire Company.

It appears from the record that on December 26, 1893, the First National Bank of Joliet filed a bill in the nature of a creditor's bill against the Ashley Wire Company, in which it was averred that the complainant had recovered a judgment against the wire company for $12,657.77 upon which an execution had been issued and returned "No property found," and which judgment remained wholly unsatisfied; that said wire company had mortgaged its plant to the Illinois Steel Company to secure an indebtedness of $67,240.24; that one John Y. Brooks had obtained a judgment against said wire company for $11,090, upon which an execution had been issued and levied upon all the tangible personal property of said wire company liable to seizure on execution; that the sheriff had not yet sold said personal property, which was worth about $5,000 and wholly inadequate to satisfy the execution of said Brooks. The bill alleged the insolvency of the wire company, and averred that for many months its manufacturing operations had been suspended, and its plant permitted to remain idle; that its plant was very valuable and liable to deteriorate, which should not be allowed; that it had no means with which to pay insurance or taxes, or to protect and preserve the property, or preserve and collect its equitable assets, and that for want of such means, its officers were little

inclined to care for its interests.    It was also averred that
the personal property levied on by Brooks could not be
sold at execution sale without ruinous sacrifice, and ought to
be sold at private sale; and to that end and for the collection
and preservation of the company's assets, the appointment
of a receiver was necessary in the interests of the Ashley
Wire Company and all its creditors, including the com-
plainant.

Notwithstanding the fact that the Illinois Steel Company
was the principal creditor of the Ashley Wire Company,
and the holder of an incumbrance on its entire plant, it was
not made a defendant to this bill.

The defendants to the bill entered their appearance in
the cause, and such proceedings were had that on the day
the bill was filed, said 26th day of December, 1893, one
George W. Bush was appointed receiver, and the sheriff
was ordered to turn over to him all the personal property
levied on under the Brooks execution, and the receiver was
ordered to take possession of all the real estate and personal
property, books of account, bills receivable, etc., procure
proper insurance, and to "pay all taxes and assessments
legally levied upon said real estate."

On February 19, 1894, the receiver having no money with
which to pay taxes, presented a petition to the court asking
authority to borrow money to pay such taxes and to issue
certificates therefor, and that the certificate for money to
pay the personal property tax be made a first lien upon the
personal property, and that the certificate for money to pay
taxes on the real estate be made a first and prior lien upon
the real estate.    An order was entered February 20, 1894,
denying, without prejudice, the petition as to the personal
tax, but authorizing the receiver to pay the real estate taxes,
and for that purpose to borrow the money and issue his
certificate therefor, which certificate was by said order
declared a first and prior lien upon the real estate of the
Ashley Wire Company.

Prior to this time the Illinois Steel Company had not
taken any legal proceedings against the Ashley Wire Com-

pany, but on March 7, 1894, it filed a bill to foreclose its mortgage on the plant of said last mentioned company, which was made a defendant, together with the Will County National Bank, the First National Bank of Joliet, John Y. Brooks and George W. Bush, the receiver theretofore appointed, who was made a party defendant by leave of the court.

After this foreclosure suit was commenced, and on July 12, 1894, the Illinois Steel Company loaned to said Bush as such receiver, the sum of $2,037.82 with which to pay taxes, and obtained therefor a receiver's certificate, reciting that it was issued under said order of February 26, 1894, and that it was by the terms of said order made a first and prior lien upon all the real estate of said Ashley Wire Company, and that the money loaned thereon was to be used exclusively to pay the said taxes.

The mortgage sought to be foreclosed by the Illinois Steel Company was dated, acknowledged and filed for record, July 19, 1893, and contained a provision that " Upon the filing of any bill to foreclose this mortgage, in any court having jurisdiction thereof, such court may appoint A. F. Knox, or any proper person receiver, with power to collect the rents, issues and profits arising out of said premises during the pendency of such foreclosure suit, and until the time to redeem the same from any sale that may be made under any decree foreclosing this mortgage shall expire; and such rents, issues and profits when collected may be applied toward the payment of the indebtedness and costs herein mentioned and described." Answers were filed by the First National Bank and the wire company, and upon final hearing a decree was entered finding the equities for the complainant, the Illinois Steel Company, the amount due under its mortgage, and ordering a sale of the property in default of payment. In pursuance of this decree a sale of the premises was made by the master, who reported a deficit or unpaid balance under the said decree, of $5,316.50, for which deficiency a decree was entered against the Ashley Wire Company with interest at five per centum from March 8, 1895, and execution therefor was ordered.

The Illinois Steel Company afterward, on April 10, 1895, filed its petition in the foreclosure suit, setting up the foregoing facts, and the provisions of the mortgage creating a charge on said rents until the expiration of the time of redemption, and also the fact of said deficiency decree, and praying for the appointment of a receiver to collect said rents and profits, and apply them on said deficiency.   On the hearing of said petition on June 20, 1895, the court declined to appoint a new receiver, but ordered that the receivership theretofore existing in the case of the bank against the Ashley Wire Company be extended to include the property and effects of said wire company, and said Bush as such receiver was directed to receive the rents and profits of the plant of said company in the foreclosure cause, to be held by said receiver for the benefit of all persons who should thereafter be ascertained to be entitled thereto, subject to the further orders of the court.   It appears that the receiver, under the first order of the court appointing him, leased the plant of the Ashley Wire Company for a term of one year from December 1, 1894, at a rental of $6,000 per annum, payable monthly in advance, by a written lease, which contained a provision from an additional term of one year on the same terms, at the option of the lessee.

At the foreclosure sale, the Illinois Steel Company became the purchaser, and the premises not having been redeemed therefrom, it obtained on June 9, 1896, a master's deed therefor, and applied to the court, in the foreclosure suit, for an order giving it the possession of the property.   The tenant appeared and resisted the application, but on a hearing in November, possession was ordered to be surrendered to the Illinois Steel Company at midnight of November 30, 1896, the date of the expiration of the tenant's lease.

The receiver collected in all for rents on the plant of the Ashley Wire Company the sum of $12,000, out of which he disbursed for taxes and necessary expenses the sum of $7,626.52, leaving a balance in hands of the receiver of $4,373.48.

The controversy in this case arises over the disposition

and distribution of this balance, the chief subject of contention being concerning that portion of the rent accruing between April 10, 1895, and June 9, 1896, it being conceded by appellant that the Illinois Steel Company is entitled to the rents from June 9, 1896, the date it obtained its deed to the property, and the steel company making no claim to the rents accruing prior to April 10, 1895, the date on which it filed its petition for a receiver in its foreclosure suit.

It is insisted on behalf of appellant that, by the foreclosure sale under the decree, the mortgage of the Illinois Steel Company was absolutely extinguished, and that thereafter no rights or equities remained to be enforced thereunder by the steel company or any one else; that after such sale the steel company had but two relations to the wire company, viz.: First, as the holder of the certificate of purchase, and second, as a judgment creditor under its deficiency decree. Under the case of Davis v. Dale, 150 Ill. 239, we think it is clear that the Illinois Steel Company can have no claim to rents or payment of taxes during the redemption period simply by virtue of its certificate of purchase, but it does not necessarily follow that under the clause contained in the mortgage creating a charge on the rents and profits during that period, said company would not have the right to any benefit thereof. By that clause or provision in the mortgage, we think the entire debt secured by it was made a charge on the rents until the right to redeem from any foreclosure sale had expired, and the appointment of a receiver was authorized to collect such rents and apply them toward the payment of the debt and costs. No reason is perceived why this was not a valid and binding contract. No authority is cited which, in our judgment, shows its invalidity. Certainly the parties had the power to make such a contract, and by its terms it violates no rule of law; why, then, should not a court of equity enforce it? Counsel for appellant seem to argue against the validity of this provision in the mortgage, on the ground that "It is against the policy of the law that the mortgagor may, in advance, stipulate away the humane provision the law has established

for his security and protection." We are not prepared to give our acquiescence to this proposition. We see no more illegality in enforcing a mortgage on rents and profits arising out of property than in the case of a mortgage upon the property itself. Rents and profits are just as much property as the estate out of which they arise, and are equally the subject of mortgage or sale. The cases are numerous in which it has been so held. But counsel for appellant, while conceding this to be the law, insists that in the mortgage under consideration, the rents and profits did not constitute any part of the subject-matter of the grant, but that the clause in the mortgage referring to rents and profits rested for its enforcement, or was dependent upon, the sound discretion to be exercised by a court of equity. We are of a different opinion. We think that provision of the mortgage created a charge on the rents and profits for the payment of any portion of the mortgage debt which might remain unsatisfied during the whole period allowed by law for redemption. The case of Oakford v. Robinson, 48 Ill. App. 270, is an authority in point, and while counsel for appellant strongly urges that this case was erroneously decided, we are satisfied as to the correctness of the conclusions reached. The cases of Seligman v. Laubheimer, 58 Ill. 124, Ogle et al. v. Koerner et al., 140 Id. 170, and Davis v. Dale, 150 Id. 239, are cited as supporting the proposition that a foreclosure sale extinguishes the mortgage and renders it *functus officio ;* and no doubt the court does so hold in those cases, and properly too, when applied to the facts then before the court. But the question before us was not raised or decided in any of the cases above cited, and there is nothing in them which militates against the proposition that if the sale does not pay the mortgage debt, and the mortgage itself provides for a resort to the rents and profits during the redemption period, that such provision of the mortgage may be enforced in favor of the mortgagee. No authority has been cited on either side which can be said to be squarely in point, unless it be the case of Oakford v. Robinson, *supra;* and we think, upon

principle and the soundest rules of equity, appellee had the
right to have the benefit of this portion of the contract
enforced in its favor. Clearly the object and purpose of
the mortgage was not accomplished until the entire debt
sought to be secured thereby was fully paid. No rights of
the appellant are violated by this holding. The mortgage
was on record long before appellant obtained its judgment
or secured the appointment of a receiver, and it had full
notice that the steel company was entitled to a prior lien
upon the rents and profits of the Ashley Wire Company
plant, in the event that a resort to them was necessary to
pay its mortgage debt to appellee. We find nothing in the
record to show that the steel company did not act in good
faith, and bid off the property at a foreclosure sale for all it
was reasonably worth; and hence the argument, that before
it can be entitled to the relief prayed for under the provision
of the mortgage under consideration, it must come into court
with clean hands, would seem to be without force. Even
granting, for the sake of argument, that this clause of the
mortgage only gives the mortgagee a right to its enforce-
ment, in the sound discretion of a court of equity (which,
however, we do not concede as a matter of law), still we do
not perceive in what manner the discretion has been abused
in the case now before us. We feel constrained to hold, not-
withstanding the very able and ingenious arguments of
counsel for appellant, that the court below decided the ques-
tions before it on correct principles, and properly adjudi-
cated the rights of the parties.

It is not contended by counsel for appellant that the court
erred in its judgment as to the amounts to be paid to the
respective parties, provided its decree proceeded upon cor-
rect principles, and hence we do not deem it important or
necessary to examine in detail the figures arrived at.

Serious complaint is made by counsel for appellee in their
argument that the Circuit Court did not give it all it was
entitled to under the proofs, but no cross-errors are assigned,
as they say, because, under the decree as entered, the funds
in the hands of the receiver will be exhausted, and they

could derive no benefit from a reversal of the decree. The decree appealed from gave the appellant, substantially, the benefit of all rents collected by the receiver (less taxes and necessary expenses) prior to the time the receivership was extended for the benefit of appellee, the Illinois Steel Company, which was April 10, 1895, and gave to appellee the benefit of all rents collected after that date, less taxes and necessary expenses. We think this action of the court was entirely proper, and must be affirmed. No point is made in the argument against the decree of the court concerning the costs; and upon a very careful examination of the record, and finding no error therein, we think the decree must be affirmed.

DIBELL, J., took no part.